874 A.2d 1145

**In re Objections to the Nominating Petitions of Constance G. RANKIN**

**Petition of John T. Connors, Susan Abramowich and Elizabeth Radcliffe.**

Supreme Court of Pennsylvania.

May 12, 2005.

### ORDER

PER CURIAM.

**AND NOW,** this 12th day of May 2005, the Petition for Allowance of Appeal is DENIED.

Justice CASTILLE dissents. Dissenting Statement to follow.

Justice CASTILLE (dissenting).

I write to explain my notation of dissent to this Court's May 12, 2005 order declining to review this election matter. This Court's decision to deny allocatur leaves a significant election issue unaddressed by the Pennsylvania appellate courts.[1] With regard to emergency election matters, this Court is

1. The Commonwealth Court in this case reversed the trial judge via an unpublished, single-judge memorandum by Senior Judge Barry F. Feudale.

under constraints with regard to timing of elections; thus, we cannot review and correct all erroneous decisions below. Nevertheless, I believe that this case raises a special and important issue, new to this Court, and particularly worthy of consideration in a situation where the decision below was erroneous. *See* Pa.R.A.P. Rule 1114. For reasons set forth below, I would have granted this petition, ordered the matter submitted on the pleadings, reversed the Commonwealth Court order, and struck respondent, Constance G. Rankin, from the ballot for the office of Magisterial District Judge in Allegheny County.

Respondent was a candidate in the May 17, 2005 primary for the office of Magisterial District Judge on both the Republican and Democrat tickets.[2] Under 25 P.S. § 2912(b), a candidate is required to specify her "profession, business or occupation" on the nominating papers.[3] In her nominating petitions, respondent listed "attorney/publisher" as her profession, business or occupation. The record below established that respondent was admitted to practice law in Pennsylvania in 1992 and practiced for approximately ten years. After her father, the owner and publisher of a small newspaper, became ill, respondent gradually removed herself from the practice of law to assume operation of the newspaper. Since December 14, 2002, respondent has been on inactive status due to her failure to comply with Pennsylvania's mandatory continuing legal education (CLE) requirements.[4] On March 15, 2005, petitioners John T. Connors, Susan Abramowich and Elizabeth Radcliffe, filed a Petition to Challenge Nominating Peti-

**2.** Unofficial election results show that respondent received the most votes in each primary.

**3.** Section 2912 provides in pertinent part:
All nomination papers shall specify ... (b) the name of each candidate nominated therein, his profession, business or occupation, if any; and his place of residence with street and number, if any; ....
25 P.S. § 2912(b).

**4.** Rule 105 provides in pertinent part:
Every active lawyer shall annually complete, during the compliance period to which he or she is assigned, the CLE required by the Board pursuant to these Rules and established in Board regulations.
Pa.R.C.L.E., Rule 105(a)(1).

tions of Respondent, claiming that respondent violated the Rules of Professional Conduct, Rule 5.5, 42 Pa.C.S., when she listed "attorney/publisher" as her current profession, business or occupation.[5]

The trial court held a hearing on March 22, 2005. After reviewing the nomination petitions, taking testimony and hearing arguments, President Judge Joseph M. James granted the objectors' petition. The trial court held that, "[r]espondent was not a licensed attorney and still represented herself as such on her nominating petition. Electors who signed the Petition were falsely led to believe that respondent was a practicing attorney." Trial Court Op. at ——.

Respondent filed a timely appeal to the Commonwealth Court, which reversed. In an unpublished memorandum opinion, Senior Judge Feudale held that "the trial court's finding that respondent knowingly falsified her affidavit with the intent to deceive is not supported by substantial evidence in the record, and that voiding the candidate's nomination petitions was an abuse of discretion and/or error of law." Cmwlth. Court Slip Op. at 11 (footnote omitted). Senior Judge Feudale noted that the trial judge had made no explicit credibility determinations on the record and found that the record is devoid of any factual foundation that respondent listed her occupation, as opposed to her profession, as attorney. *Id.* at 10.

An election code should be construed liberally "so as not to deprive an individual of his right to run for office, or the voters of their right to elect a candidate of their choice." *In*

---

5. Rule 5.5 provides, in relevant part:
   (a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.
   (b) A lawyer who is not admitted to practice in this jurisdiction shall not:
   (1) except as authorized by these Rules of [sic] other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or
   (2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.
   Rules of Prof. Conduct, Rule 5.5, 42 Pa.C.S.

*re Nomination Petition of Driscoll,* 577 Pa. 501, 847 A.2d 44, 48 (2004) (citations and quotations omitted). Concerning the validity of challenges to nominating petitions, this Court may only reverse if necessary findings of fact are not supported by substantial evidence in the record, if there was an abuse of discretion, or if there was an error of law. *See id.* at 49; *In re Nomination Petition of Flaherty,* 564 Pa. 671, 770 A.2d 327, 331 (2001). Moreover, nomination petitions are presumed to be valid and an objector has the burden of proving that a nomination petition is invalid. *See* 25 P.S. § 2937.

The presumption, however, is not irrebuttable. In *In re Nomination Petitions of McIntyre,* 778 A.2d 746, 754 (Pa. Cmwlth.2001), the Commonwealth Court found that a judicial candidate's affidavit contained a material defect because he listed his mother-in-law's house in the City of Pittsburgh as his residence, instead of a home, which he shared with his wife and children outside the city limits. The Commonwealth Court found that the evidence presented demonstrated that McIntyre intentionally tried to deceive the electorate by listing a false address, and accordingly, it granted the petition to set aside his nomination papers. *Id.* at 754. Upon further review, this Court issued a unanimous *per curiam* order affirming the order of the Commonwealth Court. *In re Nomination Petitions of McIntyre,* 564 Pa. 670, 770 A.2d 326 (2001).

The current facts are analogous to those in *McIntyre.* Just as McIntyre obviously knew for election purposes that he did not reside within the City of Pittsburgh, respondent likewise knew that she was not currently an "attorney" licensed to practice law in Pennsylvania, and yet she used the unqualified "attorney" designation to garner support for the judicial position she was seeking. The record reveals that respondent was well aware that she was not admitted to practice law in Pennsylvania, but instead was a "formerly admitted attorney" on inactive status.[6]

---

**6.** The following exchange occurred between Judge James and respondent during the March 22, 2005 hearing:

Under the Pennsylvania Rules of Disciplinary Enforcement, the definition of a "formerly admitted attorney" is a disbarred, suspended or inactive attorney. Pa.R.D.E., Rule 102. The Rules also provide, in an unequivocal fashion, that a formerly admitted attorney must notify "persons with whom the formerly admitted attorney may at any time expect to have professional contacts under circumstances where there is a reasonable probability that they may infer that he or she continues as an attorney in good standing" of the disbarment, suspension or transfer to inactive status. *Id.*, Rule 217. Furthermore, Rule 217 specifically prohibits a formerly admitted attorney from "representing himself or herself as a lawyer or person of similar status." If a formerly admitted attorney remains on inactive status for more than three years, that person can only be reinstated by formal order of this Court. *Id.*, Rule 218.

At the time respondent circulated her petitions, she could not legally practice law given her inactive status. Respondent could no longer practice law as a profession or as a business, and "attorney" was clearly not her current occupation. Knowing that she was technically a "formerly admitted attorney," respondent also knew, or should have known, of the disciplinary rules she was bound by, not only under the Code of Professional Ethics, but also under the Rules of Disciplinary Enforcement.

I agree with the learned trial judge below, that the signators/electors who signed respondent's petitions were falsely led to believe that respondent was an attorney. Words are a lawyer's standard in trade, and lawyers should be held to their meaning. A former occupation is not a current occupation. A conditional or equivocal status is not an unequivocal one. And even formerly admitted attorneys are expected to know how to

Court: The voters think you are an active attorney admitted to practice law. From reading the nominating papers, that's what I would think.

Respondent: They don't say that I'm an attorney-at-law. They say attorney, and according to the Pennsylvania Supreme Court I'm an attorney formerly admitted. I'm still an attorney. I'm just not admitted to practice law in Pennsylvania.

comport themselves—at least when it comes to representation of their status as lawyers. What respondent viewed as an "explanation" of her conduct at the hearing below, properly understood, was a confession.

During the hearing, respondent testified as follows "I tell everybody that I practiced law until four years ago, and then I began publishing the newspaper." R. 8. But, that is not what her nominating petitions demonstrate. Respondent did not have personal contact with every elector who signed her petitions to inform them, contrary to what the petition said, that she was actually a "formerly admitted attorney." Instead, she created a false impression that she was a practicing attorney. How was the electorate to know that respondent was not admitted to practice in Pennsylvania, and furthermore, was in apparent violation of disciplinary and ethical rules for holding herself out as such? Respondent's misrepresentation, moreover, was material. When a person is seeking to attain elected judicial office as a Magisterial District Judge, the fact that that candidate is an attorney obviously might sway an elector to sign her petition. The fact that one is an attorney no doubt is an advantage over candidates for this position who are not so qualified; a false claim to be an attorney, in the context of a nomination petition for a judicial position, is misleading in the extreme.

For these reasons, I believe respondent materially misstated her employment; that President Judge James properly struck the nomination petitions; that the Commonwealth Court erred as matter of law in reversing the trial court; and that respondent should have been struck from the primary ballots. I would not ignore this important issue and let such a fundamental defect in an election matter stand, unacknowledged by the appellate courts and uncorrected. Hence, I respectfully dissent.